BOARD OF HEALTH OF VENTNOR CITY

*v.*

NORTH AMERICAN HOME et al.

LYDIA PATTON et al.

*v.*

NORTH AMERICAN HOME et al.

[Heard July 5th, 1910.   Determined July 7th, 1910.]

1. Upon application for an injunction *pendente lite* under a bill seeking
to prevent the defendant from conducting in one of the municipalities
of this state a sanatorium for the treatment of tuberculosis, it appearing
from the affidavits filed on behalf of the defendant that such an insti-
tution is not for the treatment of persons afflicted with pulmonary tuber-
culosis, but exclusively for the treatment of children afflicted with bone
tuberculosis, the application was denied, upon the ground that the work
to be conducted was a lawful work, and is not a source of danger and
is to be conducted in a proper manner and will not occasion real injury
to others.

2. Whether any of the provisions of the statute concerning tuberculosis (*P. L. 1910 p. 279*) are intended to include bone tuberculosis it is unnecessary now to consider.

On bills, &c., for injunction.

*Messrs. Thompson & Cole* and *Mr. John S. Westcott,* for the complainants.

*Mr. George A. Bourgeois,* for the defendants.

LEAMING, V. C.

Two bills have been filed, in each of which the object sought is to prevent defendant from conducting in Ventnor City a sanatorium for the treatment of tuberculosis. One bill was filed by the board of health of that city and the other by individual residents and property holders. A preliminary hearing has been had to determine whether an injunction *pendente lite* should be issued. By stipulation the two suits have been heard together.

The affidavits filed in behalf of defendant disclose that the institution of which complaint is now made is not an institution for the treatment of pulmonary tuberculosis, but is a sanatorium which is to be devoted exclusively to the treatment of children who are afflicted with bone tuberculosis.

The sanatorium is for the free treatment of poor children who are afflicted with the disease last named, and is not maintained for profit. The provisions of *P. L. 1907 p. 411,* requiring a municipal license in certain cases, have no application to an institution which is not conducted for profit.

Notwithstanding the great public good which will necessarily result from the work of an institution of this nature, it is manifest that if the health of the residents of Ventnor City is jeopardized by its maintenance, a court of equity may grant such relief as will afford adequate protection to the residents of that city from the threatened danger; but if no real danger of that nature exists the mere fact the uninformed people who are unacquainted with the true conditions may, or probably will, assume such a danger to exist, cannot be made the basis of equitable relief.

The answer which has been filed in behalf of defendant is accompanied by affidavits of a great number of physicians and surgeons of eminence in their profession, and who have given special study to the various forms of tuberculosis. These physicians have testified that while pulmonary tuberculosis is undoubtedly contagious, bone tuberculosis is neither contagious nor infectious, and cannot be transferred from one to another; and that cases of bone tuberculosis are freely admitted to all the hospitals and treated in the same wards as other surgical cases. If this be true it is manifest that no danger to the health of the inhabitants of Ventnor City is threatened by the maintenance of the sanatorium in question, and the grievance asserted by complainants is based upon an assumed danger which does not in fact exist.

It is urged in behalf of complainants that the legislature of this state had declared bone tuberculosis to be a communicable disease. An act concerning tuberculosis, approved April 9th, 1910 (*P. L. 1910 p. 279*), contains this sentence: "Tuberculosis is hereby declared to be an infectious and communicable disease, dangerous to the public health."

An examination of the several provisions of that act, as well as the similar act of 1909, which it repeals, especially when considered in connection with the testimony touching the difference between pulmonary and bone tuberculosis, renders it at least doubtful whether the portion of the act above quoted was intended by the legislature to include bone tuberculosis. Throughout the act the word "tuberculosis" is used without qualification, and some of its provisions are clearly inapplicable to bone tuberculosis. By the fifth section of the act it is made a misdemeanor for "any person having tuberculosis" to dispose of his sputum in a manner contrary to the directions of the act. If any truth is to be found in the affidavits of the physicians who have testified touching the nature of bone tuberculosis, it is entirely manifest that the legislature has not, by the section last referred to, intended to control the disposition of the sputum of persons afflicted only by bone tuberculosis. Whether any of the provisions of that act are intended to include bone tuberculosis it is here unnecessary to consider. But I am convinced that the legis-

lation referred to cannot properly be deemed operative to render the institution conducted by defendant a nuisance *per se.*

As the present record discloses that the work to be conducted by defendant is a lawful work, and is not a source of danger, and is to be conducted in a proper manner and will not occasion real injury to others, I will advise an order denying a preliminary injunction. Costs may abide the event on final hearing.